Case 3:16-cv-00012 Document 36 Filed in TXSD on 08/17/16 Page 1 of 19

United States District Court
Southern District of Texas
**ENTERED**
August 17, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| SANDBOX LOGISTICS LLC, *et al*, § § | |
| Plaintiffs, § | |
| VS. § | CIVIL ACTION NO. 3:16-CV-12 |
| § | |
| GRIT ENERGY SOLUTIONS LLC, *et al*, § § | |
| Defendants. § | |

## MEMORANDUM OPINION AND ORDER

Defendant Grit Energy Solutions, LLC ("Grit") has moved for an intra-district transfer of this patent infringement suit to the Houston Division of the Southern District of Texas, contending Houston is a more convenient venue (Dkt. 8). Plaintiffs, SandBox Logistics, LLC; SandBox Enterprises, LLC and Oren Technologies, LLC (collectively "SandBox") sued Grit for patent infringement, unfair competition by misappropriation, and fraud (Dkt. 1). Having reviewed the full record and the governing legal authorities, the Court **DENIES** Grit's Motion to Transfer Venue to the Houston Division pursuant to 28 U.S.C. § 1404(a) (Dkt. 8).

### BACKGROUND

Sandbox was formed to commercialize and develop technology. Dkt. 1, Pl's Complaint, ¶ 24. Sandbox filed this suit alleging that Grit's services and products infringed on U.S. Patent No. 8,585,341 and U.S. Patent No. 8,827,118 arising under the patent laws of the United States, 35 U.S.C. § 1, et seq., and for unfair competition and fraud under Texas common law. *Id.* ¶ 6. In its Complaint, Sandbox alleges that venue is

1

proper in this Court because Grit regularly conducts business and a substantial part of the events or omissions giving rise to the claims occurred within the Southern District of Texas. *Id.* ¶ 12.

The Sandbox plaintiffs are Texas limited liability companies whose principal places of business are in Houston, Texas. *Id.* ¶¶ 3, 4. Grit is a Montana limited liability company with a principal place of business in Montana. *Id.* ¶ 5. Sandbox alleges Grit committed acts of patent infringement in this District by selling or offering to sell products and services that infringe on the asserted patents. *Id.* ¶¶ 3, 4. Grit has not filed an Answer, but instead filed a motion to dismiss the misappropriation and fraud claims and to transfer venue to the Houston Division of the Southern District of Texas. Dkt. 8.

Grit contends that transfer to Houston is warranted because the Houston Division would be a more convenient forum for the resolution of this litigation. *See id.* Based on the pleadings, applicable law, and for the reasons stated below, the motion for an intra-district transfer is **DENIED**.

## STANDARD FOR CONVENIENCE TRANSFERS

Change of venue is governed by 28 U.S.C § 1404(a). The venue transfer statute provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28

U.S.C. § 1404(a). The § 1404(a) factors apply as much to transfers between divisions of the same district as to transfers from one district to another.[1]

This is a patent lawsuit, and the Federal Circuit applies the law of the Fifth Circuit to evaluate transfer of venue motions that arise in this Court. *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). First, the Court must ask whether this suit might have been brought in the transferee venue of the Houston Division of the Southern District of Texas. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (en banc) (*In re Volkswagen II*). If the transferee venue is proper, it then is Grit's burden to demonstrate that the Houston Division of the Southern District of Texas is clearly more convenient than the venue chosen by the plaintiff, *i.e.*, the Galveston Division of the Southern District of Texas. *Id.* at 315.

To determine whether Grit has met this burden, the Court must analyze a set of private and public interest factors, none of which are given dispositive weight. *See id.* In other words, motion to transfer venue pursuant to § 1404(a) should be granted if "the movant demonstrates that the transferee venue is clearly more convenient," taking into consideration private and public interest factors. *Id.* The private-interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and

---

[1] *See generally* 17 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 111.21[2], at 111-154 to 111-155 (3d ed. 2013) ("[A] transfer to another division in the same district will be granted if it is more convenient for the parties and witnesses and is in the interest of justice.") (*citing,* inter alia, *Weber v. Coney*, 642 F.2d 91, 93 (5th Cir. Unit A March 1981) (per curiam)).

3

inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (*In re Volkswagen I*). The public-interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.* The Court must "weigh the relevant factors and decide whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'" *Atl. Marine Construction Co., Inc. v. United States Dist. Court for the Western Dist. of Texas*, — U.S. —, —, 134 S. Ct. 568, 581, 187 L. Ed. 2d 487 (2013).

The plaintiff's choice of venue is not a separate factor in this analysis. *In re Volkswagen II*, 545 F.3d at 314–15. Rather, the plaintiff's choice of forum contributes to the defendant's burden in showing good cause for the transfer. *Id.* at 315 (the party seeking the transfer 'must show good cause' for the transfer). To show good cause, the moving party must demonstrate that the transferee venue is "clearly more convenient" than the transferor venue. *Id.; see also In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013) ("A motion to transfer venue pursuant to § 1404(a) should be granted if 'the movant demonstrates that the transferee venue is clearly more convenient [.]'"). Ultimately, it is within the Court's "broad discretion" whether to order a transfer. *In re Volkswagen II*, 545 F.3d at 311. If the movant "demonstrates that the transferee venue is clearly more convenient" than the plaintiff's chosen venue, the district court should grant

4

the transfer. *Id.* at 315. [2] "Thus, when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *See id.*

## ANALYSIS

As an initial matter, it is undisputed that SandBox's claims could have originally been filed in the Houston Division. SandBox is a resident of the Houston Division (Dkt. 1 at ¶¶ 2-4), and Grit's alleged contacts with the Southern District of Texas are all alleged by SandBox to have occurred in the Houston Division (*Id.* at ¶¶ 9-10). Accordingly, this action could have been brought in the Houston Division. The venue statute, 28 U.S.C. § 1391, is based on districts, not divisions. If venue is proper in Galveston, it is also proper in Houston. *See* 28 U.S.C. §§ 1391(b)-(d), 1400(b).

The Court next turns to analyze the relevant private and public interest factors. While no single factor is dispositive, the Court is mindful that the Federal Circuit has given some guidance on the balancing of particular factors. *See, e.g., In re Nintendo Co.,*

---

[2] The plaintiff's choice of venue is not a distinct factor in the § 1404(a) analysis, instead, the Fifth Circuit has stated that, "when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *In re Volkswagen II*, 545 F.3d at 315. Thus, by requiring that a movant show the transferee venue is "clearly more convenient," "[a] plaintiff's choice of [venue] is given 'some'—significant but non-determinative—weight." *Weber v. PACPT XPP Technologies, AG*, 811 F.3d 758, 767 (5th Cir. 2016) (citing *Atl. Marine*, 134 S.Ct. at 581 n.6.). "In *Radmax*, the Fifth Circuit noted conflicting authority on whether a plaintiff's choice of forum is given more or less deference when an intra-district transfer is sought, but declined to 'announce a general standard governing intra-district transfers in all situations.' *Radmax*, 720 F.3d at 289 (noting Eastern District of Texas cases affording plaintiffs' choice greater deference for intra-district transfers but also citing a leading civil procedure treatise that concludes the deference should be less in this context (citations omitted)). Given *Radmax*'s general thrust that intra-district transfers are governed by the same standards that apply to inter-district transfers, this Court will apply the 'clearly more convenient' standard that *Volkswagen* announced for inter-district transfers. *Cf. id.* at 288 (noting that courts should consider the same factors considered for inter-district transfers when analyzing intra-district transfers)." *Hebert v. Wade*, No. 3:13-CV-00076, 2013 WL 5551037, at *2, n.2 (S.D. Tex. Oct. 7, 2013).

5

*Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009) (applying Fifth Circuit law) ("[I]n a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer."). However, as the Fifth Circuit has noted, balancing these factors involves more than "a raw counting of the factors in each side, weighing each the same and deciding transfer on the resulting score." *In re Radmax*, 720 F.3d at 290 n.8.

As discussed below, the Court finds that two factors favor transfer to Houston, two favor retaining the case in Galveston, and four are neutral or not implicated. On balance, the factors do not completely favor or disfavor transferring this case to the Houston Division. Sandbox filed in his own District. *See* Dkt. 1. Unlike to *Radmax*, 720 F.3d 285 (5th Cir. 2013), Grit here fails to meet its burden of showing that the Houston Division is "clearly more convenient".[3]

### A. The Private-Interest Factors

#### 1. Relative Ease of Access to Sources of Proof

The first factor favors transfer to Houston. Sandbox argues that the "sources of proof are not more easily accessible in Houston than they are in Galveston" because of Grit's "travel preferences." Dkt. 17 at 7-8. The Court disagrees. The source of proof

---

[3] Grit cites *Sivertson v. Clinton*, No. 11-00836, 2011 WL 4100958, at *4 (N.D. Tex. Sept. 14, 2011), for the proposition that Sandbox's venue should not be "accorded deference" because its "home forum is the Houston Division, not Galveston". However, the Court finds that argument inapplicable because *Sivertson* was an inter-district transfer not an intra-district transfer. 2011 WL 4100958 at *4 ("[Plaintiff's] choice of the Northern District of Texas is not entitled to significant weight because she filed suit outside of her home forum: the Southern District of Texas."). *See also Rimkus Consulting Grp., Inc. v. Balentine*, 693 F. Supp. 2d 681, 690 (S.D. Tex. 2010) (inter-district transfer).

6

factor here weighs in favor of intra-district transfer where, all of the evidence is in the transferee location. *See, e.g., Radmax*, 720 F.3d at 288 ("[B]ecause [a]ll of the documents and physical evidence are located in the [transferee] Division, this factor weigh[s] in favor of transfer.") (internal quotations omitted).

In *Radmax*, the Fifth Circuit clarified that the inconvenience of transporting documents sixty-two miles to the Marshall Division from Radmax's place of business in the Tyler Division "may well be slight, but ... the question is of *relative* ease of access, not *absolute* ease of access." *Id.* at 288 (emphasis in original). The Court then found that the relative ease of access to sources of proof weighed in favor of transfer "because all of the documents and physical evidence are located in the Tyler Division." *Id.* (quotations and alterations omitted). Grit argues that "any sources of proof ... will be located in Houston." Dkt. 8 at 19. The Court here, however, is unable to determine the exact number of miles from this courthouse to Grit's place of business, since neither party has identified any potential sources of proof in the Galveston Division. However, the Court presumes that the Houston Division will provide relatively easier access to potential documentary evidence favors transfer. Even if some or a majority of the documentary evidence is stored electronically, "this does not negate the significance of having trial closer to where [Grit's] physical documents and employee notebooks are located," because "the critical inquiry is relative ease of access, not absolute ease of access." *In re Toa Technologies*, 543 Fed. App'x 1006, 1009 (Fed. Cir. 2013) (noting, "Since no party is headquartered in the Eastern District of Texas, and the existence of physical sources of proof in the Northern District of Ohio makes that venue more convenient for trial, this

7

factor should have been weighed in favor of transfer."); *see also In re Volkswagen II*, 545 F.3d at 316 (noting, "All of the documents and physical evidence relating to the accident are located in the Dallas Division, as is the collision site.").

Additionally, "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer," and this factor weighs in favor of transfer to the location where Grit's documents are kept which Grit states is in Houston, although the Court is not told exactly where in the City of Houston it might be. *See In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (applying Fifth Circuit law, granting mandamus relief for the district court's denial of a motion to transfer venue to the Northern District of California); *see also Standard Innovation Corp. v. Leloi AB*, No. 11-04172, 2015 WL 6396057 (S.D. Tex. Oct. 21, 2015). Therefore, Court finds that this factor weighs in transfer to the Houston division.

### 2. Availability of Compulsory Process to Secure Attendance of Witnesses

The second private interest factor instructs the Court to consider the availability of compulsory process to secure the attendance of unwilling witnesses by a court order. *See In re Volkswagen II*, 545 F.3d at 316; *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 581 n.6, 187 L. Ed. 2d 487 (2013). This factor is neutral or not implicated by these facts. Under the Federal Rules of Civil Procedure, a district court may enforce a subpoena issued to any witness for trial, hearing or deposition within 100 miles of the place in which that witness resides, works, or regularly transacts business in person, or for a trial, anywhere within the state in which the witness works, resides, or regularly transacts business in person, provided that witness does not

incur substantial expense. FED. R. CIV. P. 45(c)(1)(A)-(B). In compiling the list of potential witnesses to review the availability of compulsory process, the Court has reviewed the motion to transfer and related briefing, as well as the parties' filings and the Certificates of Interested Parties. *See, e.g., In re Apple Inc.*, 581 Fed. App'x 886, 888 (Fed. Cir. 2014) (finding district court should have considered all prospective witnesses identified in the record, including those identified in reply briefs and initial disclosures.).

Some courts in this District have noted that witnesses who are employed by one party to the litigation are often required by their employers to attend and testify at trial, even if they are not within the subpoena power of the Court. *See, e.g., JPT Group, LLC. v. Steven Madden Retail, Inc.*, CV H-15-3264, 2016 WL 3523878, at *3-*4 (S.D. Tex. June 28, 2016); *Pension Advisory Grp., Ltd. v. Country Life Ins. Co.*, 771 F. Supp. 2d 680, 711 (S.D. Tex. 2011) (finding that a "motion to transfer under 28 U.S.C. § 1404(a) may be denied when the witnesses are employees of the defendant and their presence can be obtained by the party")). The Court notes that the Federal Circuit has not adopted this approach—even in cases arising within the Fifth Circuit.

Instead, the Federal Circuit evaluates the availability of compulsory process for unwilling witnesses without regard to their status as employees of a party. *See, e.g., In re Toa Technologies*, 543 Fed. App'x 1006, 1009 (Fed. Cir. 2013) ("Moreover, because party witnesses and three former chief financial officers of TOA were identified as residing within 100 miles of the Northern District of Ohio, transfer ensures that these individuals could be compelled to appear for both deposition and trial."); *In re Acer America Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010) (comparing the subpoena power of

9

the Eastern District of Texas with that of the Northern District of California without regard to whether witnesses were employees or party witnesses). Neither Sandbox nor Grit has identified specific addresses detailing exactly where any witness of their may be located. Grit merely argues that, "[w]ith the Galveston Division being located approximately fifty miles from downtown Houston, this appears to be a non-factor." Accordingly, the Court finds that Grit has not met its burden because the Court cannot determine whether any of the witnesses may be outside of its subpoena power. It is equally likely that any witness within the subpoena power of the Galveston Division can also be compelled to appear in Houston. Accordingly, the Court finds that this factor is neutral.

### 3. Cost of Attendance for Willing Witnesses

As with the other factors, the Court notes that Grits' submissions on this issue are wholly deficient. This factor considers the cost of attendance for those witnesses that are more than 100 miles away from the court. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *In re Volkswagen I*, 371 F.3d at 204–05. The Federal Circuit has described this factor as "probably the single most important factor in the transfer analysis." *In re Genentech, Inc.*, 566 F.3d at 1343. The inconvenience to witnesses increases with the additional distance to be traveled, including additional travel time, meal, lodging expenses, and time away from their regular employment. *In re Volkswagen I*, 371 F.3d at 205. The Court must also consider the personal costs associated with being

10

away from work, family, and community. *In re Acer America Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010), *cert. denied*, 563 U.S. 1002, 131 S. Ct. 2447, 179 L. Ed. 2d 1235 (2011) (citing *In re Volkswagen II*, 545 F.3d at 317).

Courts in this circuit often give greater weight to the relative convenience of key witnesses and key non-party witnesses in its analysis, and "the convenience of one key witness may outweigh the convenience of numerous less important witnesses." *Mid-Continent Cas. Co. v. Petroleum Solutions, Inc.*, 629 F.Supp.2d 759, 762–63 (S.D. Tex. 2009). Nevertheless, "although quite important, the convenience of witnesses does not stand alone and must be weighed against the other relevant factors that typically are considered." 15 Wright et al., FEDERAL PRACTICE AND PROCEDURE § 3851.

Grit argues that this factor weighs in favor of transfer because attending trial in Galveston would be costly and inconvenient to "***potential*** third party witness." Dkt. 8 at 20-21. Particularly, Grit argues that Sandbox's "identification of events in the Houston Division indicate that it will be more convenient for potential third party witnesses to attend a trial in Houston, rather than travel fifty miles to the Galveston Division." *Id.* at 20. With respect to party witnesses, Grit states that "SandBox is located in the Houston Division ***north of downtown***, so its willing witnesses would be traveling further to Galveston for no apparent reason." *Id.* at 21. Grit does not provide any information as to the addresses considering the "north of downtown" witnesses. Finally, Grit argues that for any employees and any third party witnesses it would be "more convenient and cost effective to fly into Houston's large airports, located in the Houston Division, rather than travel further to the Galveston Division." *Id.*

11

First, in the Fifth Circuit, "[w]hen the distance between an existing venue for trial of a matter and a proposed venue ... is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *In re Volkswagen II*, 545 F.3d at 317 (citation and internal quotation marks omitted). However, this 100–mile threshold does not mean that "transfer within 100 miles does not impose costs on witnesses or that such costs should not be factored into the venue-transfer analysis, but only that this factor has greater significance when the distance is greater than 100 miles." *Radmax*, 720 F.3d at 289 (emphasis in original). Second, in *Radmax*, the Fifth Circuit found a distance of approximately 60 miles to be sufficient to weigh in favor of transfer. *See id.* at 289-290. The 50-mile distance from Galveston to Houston is similar.

However, this factor does not weigh heavily because Grit does not identify any witnesses and the majority of the party witnesses are located somewhere in Houston. The convenience of the witnesses and the parties is generally a primary concern of this Court when considering transfer motions. But, vague statements about the convenience of unknown and unnamed witnesses are insufficient to convince this Court that the convenience of the witnesses and the parties would be best served by an intra-district transfer of venue. *See Dupre v. Spanier Marine Corp.*, 810 F. Supp. 823, 825 (S.D. Tex. 1993) (to support a transfer of venue, the moving party cannot merely allege that certain key witnesses are not available or are inconveniently located, but must specifically identify the key witnesses and outline the substance of their testimony). Because neither party has identified its key witnesses or explained the relevance of their testimony, the

Court cannot determine whether any witness will be inconvenienced by transfer. The Court therefore concludes that this factor weighs against transfer. *See id.*; *cf. Sivertson*, 2011 WL 4100958, at *6 (finding this factor to be neutral when it was unclear whether the witnesses identified by the plaintiff would provide any relevant testimony).

Given the particular geography and locations of the Houston Division, the Galveston Division, and their courthouses, to hold that a 50-mile ride from Galveston to Houston weighs in favor of transfer would gut "the importance that we must give to the plaintiff's choice [of forum]." *See In re Volkswagen II*, 545 F.3d at 314 n.10; *see also Atl. Marine*, 134 S.Ct. at 581 n.6 ("The [c]ourt must also give some weight to the plaintiff ['s] choice of forum."). Such importance is manifested by placing "a significant burden on the movant to show good cause for the transfer," requiring the movant to demonstrate that the transferee forum is "clearly more convenient." *Id.* While the 50-mile difference between courthouses is "clear," any purported "convenience" gained here is not. The Court finds that Grit's desire to avoid traveling approximately 50 miles further, does not demonstrate that the Houston Division is "clearly more convenient" than the Galveston Division. Accordingly, the Court finds that this factor weighs against transfer.

### 4. All Other Practical Problems That Make Trial of a Case Easy, Expeditious, and Inexpensive

While Grit asserts arguments based in "judicial economy", the Court finds that here this factor is not relevant and therefore neutral. *See* Dkt. 8, p. 21. The delay associated with transfer may be relevant "in rare and special circumstances," such as where a transfer of venue would cause yet another delay in protracted litigation. *Radmax*,

13

*Ltd.*, 720 F.3d at 289. Additionally, the courts consider the efficiency of the court system in handling several related lawsuits in the same district. *Acad., Ltd. v. A & J Mfg., LLC*, No. H-14-2043, 2014 WL 6679260, at *4 (S.D. Tex. Nov. 25, 2014) (granting a motion to transfer venue where there was pending litigation concerning the same patents in the proposed venue, reasoning that "it will be more efficient for the court system if the same court determines" the issue of infringement).

However "garden-variety delay associated with transfer is not to be taken into consideration when ruling on a § 1404(a) motion to transfer. Were it, delay would militate against transfer in every case." *Radmax*, 720 F.3d at 289. Here, the Court finds that there is no evidence or "rare and special circumstances" establishing that retaining and trying this case would cause significant delay or prejudice to any of the parties. Further, the Court notes that this case is still in its early stages.

This factor is neutral.

### B. Public–Interest Factors

#### 1. Administrative Difficulties Flowing from Court Congestion

This factor weighs against transfer. "To the extent that court congestion is relevant, the speed with which a case can come to trial and be resolved may be a factor." *Genentech*, 566 F.3d at 1347. The focus of the first public-interest factor is " 'not whether [transfer] will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket.'" *Rosemond*, WL 1338690, at *4 (quoting *Siragusa v. Arnold*, No. 3:12–cv–04497–M, 2013 WL 5462286, at *7 (N.D. Tex. Sept. 16, 2013)). In analyzing this factor courts often consider the median time

interval from case filing to disposition. *ExpressJet Airlines, Inc. v. RBC Capital Markets Corp.*, No. CIV A H-09-992, 2009 WL 2244468, at *12 (S.D. Tex. Jul. 27, 2009).

In the 12-month period ending in March 2016, the Southern District of Texas had over 6,000 civil filings—354 cases for each of the 17 sitting Article III judges. Median time from filing to disposition of civil cases was 7.3 months, and median time from filing to trial for civil cases was 23.1 months. In support of its motion to transfer, Grit crafts a "statistical chart" that states, "[f]or 2014 and 2015, the average disposition time is 18.5 months in the Galveston Division for patent cases and 9 months in the Houston Division." *See* Dkt. 8, pg. 22, Exhibit D, Legal Metric Custom Report Texas Southern Patent Cases in Galveston and Houston Divisions 2000 to 2016 (comparing patent filings in the Houston and Galveston Divisions of the Southern District of Texas). However, the Federal Circuit has noted that the court congestion factor "appears to be the most speculative" and that "case-disposition statistics may not always tell the whole story." *Genentech*, 566 F.3d at 1347.[4]

In this case, Galveston Division's lighter criminal docket allows it to resolve civil matters more quickly. Although Galveston has a larger civil docket than Houston on a per judge basis, criminal cases typically pose a greater impediment to prompt civil trial settings. *See Mid–Continent Cas. Co. v. Petroleum Solutions, Inc.*, 629 F. Supp. 2d 759, 767 (S.D. Tex. 2009); 18 U.S.C. §§ 3161-74 (Speedy Trial Act for criminal cases); *see*

---

[4] Indeed the Court notes that Grit's "statistical chart" is unhelpful in determining the current disposition rate of patent cases in the Galveston Division because during the time frame referenced in the chart, 2014-2015, there was no full-time district judge assigned to the Galveston-Victoria Division.

*also Perry v. Autocraft Investments, Inc.*, No. 4:13-CV-01959, 2013 WL 3338580, at *3 (S.D. Tex. July 2, 2013); *TechRadium Inc. v. FirstCall Network, Inc.*, No. 3:13-CV-78, 2013 WL 4511326, at *4 (S.D. Tex. Aug. 23, 2013). Thus, this factor favors retaining the case.

### 2. Local Interest in Having Localized Interests Decided at Home

The third factor that favors transfer is the interest in having localized interests decided at home. The local interest factor analyzes the "factual connection" that a case has with both the transferee and transferor venues. *In re Volkswagen I*, 371 F.3d at 206. The Sandbox Plaintiffs reside in Houston and some key events occurred "in Houston"— most importantly, the acts that allegedly gave rise to this action occurred in Houston. In contrast, no party resides in Galveston and no events transpired in this Division.

However, because of the physical location of the alleged infringement, the Houston Division has only the very slightest of a greater interest than does the Galveston Division. As with the preceding analysis of the sources of proof and cost of attendance factors, the differences between the Houston and Galveston communities of interest in this case are so small that there really is no difference. Accordingly, the Court concludes that this factor only slightly favors transfer.

This factor is in a practical sense slightly in favor of transferring the case to the Houston Division. Therefore, the Court determines that the Houston Division has only a slight stronger local interest in hearing this case.

### 3. Familiarity of the Forum with the Law that Will Govern the Case

Neither this Court nor Houston Division is more or less familiar with the law that will govern this case. This case will be governed by patent law that is applied by all federal courts, regardless of the state in which they sit. Therefore, this factor is neutral.

### 4. Avoidance of Unnecessary Problems of Conflict of Laws or in Application of Foreign Law

The last factor—the possible conflicts of law arising from the application of foreign law—does not affect the analysis. Because there are no conflict of laws issues that would make this case better suited for either this Court or the Houston Division, this factor cannot weigh either for or against transfer.

Accordingly, this factor is neutral.

### CONCLUSION

The Court recognizes that this suit has mere connection to the Galveston Division and virtually all of the events and witnesses regarding the case are located somewhere in or by Houston Division "area", but this does not "obviously" compel transfer. *But see Radmax*, 720 F.3d at 290 & n.12 (suggesting that transfer is "obviously compelled" where "only the plaintiff's choice weighs in favor of denying transfer and where the case has no connection to the transferor forum and virtually all of the events and witnesses regarding the case ... are in the transferee forum") (citing *La Day v. City of Lumberton, Tex.*, No. 2:11-cv-237, 2012 WL 928352, at *6–*12 (E.D. Tex. Mar. 19, 2012)).

Indeed, the Court's duty in analyzing the *Gilbert* factors is not merely an exercise in determining the division in which the events occurred and the witnesses reside. Such a

simplistic abstraction of the facts of each case obscures the realities of any actual inconveniences or lack thereof. In other words, transfer as such would defeat the purpose of 28 U.S.C. § 1404(a). This Court takes the Fifth Circuit's affirmation of the statutory language as quoted in *Volkswagen II* on face value—the transferee venue must be "clearly more convenient" and the movant "must show good cause" for the intra-district transfer. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008).[5] Such is plainly not the case here.

After careful consideration of the pleadings, the motion to transfer venue, the responses and replies, the record and evidence in this case, and the arguments of the parties, the Court finds that the Houston Division of the Southern District of Texas is not a clearly more convenient venue than this Court. "The district court has broad discretion in deciding whether to order a transfer." *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998) (quoting *Caldwell v. Palmetto State Sav. Bank*, 811 F.2d 916, 919 (5th Cir. 1987)). Weighing the relevant factors, the court concludes that "on balance, a transfer would [not] serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'" *Atl. Marine*, 134 S. Ct. at 581 (quoting 28 U.S.C. § 1404(a)).

---

[5] *Volkswagen II* notes that, "he who seeks the transfer must show good cause. This 'good cause' burden reflects the appropriate deference to which the plaintiff's choice of venue is entitled. When viewed in the context of § 1404(a), to show good cause means that a moving party, in order to support its claim for a transfer, must satisfy the statutory requirements and clearly demonstrate that a transfer is 'for the convenience of parties and witnesses, in the interest of justice.' Thus, when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected. When the movant demonstrates that the transferee venue is clearly more convenient, however, it has shown good cause and the district court should therefore grant the transfer." (citing *Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963).

## ORDER

For the reasons explained above, the Court concludes that this case should not be transferred to the Houston Division of the Southern District of Texas. Accordingly, Defendant Grit Energy Solutions, LLC's Motion to Transfer Venue to the Houston Division pursuant to 28 U.S.C. § 1404(a) (Dkt. 8) is, hereby, **DENIED**. Grit's additional Motion to Dismiss the misappropriation and fraud claims are is **DENIED AS MOOT** because Sandbox filed an Amended Complaint (Dkt. 33). *See, e.g., King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) ("An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading.").

**IT IS SO ORDERED.**

SIGNED AT GALVESTON, TEXAS, on August 17 2016.

_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE